1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARVIN GILLAM & PAMALA                No. 2:14-cv-2217-KJM-KJN PS
     GILLAM,
12
                   Plaintiffs,
13                                          FINDINGS AND RECOMMENDATIONS

14         v.

15   CITY OF VALLEJO, et al.,

16                 Defendants.

17

18   INTRODUCTION

19         Presently pending before the court is defendants' motion for summary judgment, or in the

20   alternative, partial summary judgment.  (ECF No. 34.)[1]  Plaintiffs have opposed defendants'

21   motion and also filed a cross-motion for summary judgment.  (ECF No. 38.)  Thereafter,

22   defendants filed a reply brief.  (ECF No. 39.)[2]

23         After carefully considering the written briefing, the court's record, and the applicable law,

24   the court recommends that defendants' motion for summary judgment be GRANTED IN PART

25   and DENIED IN PART, and that plaintiffs' cross-motion for summary judgment be DENIED, for

26   ───────────────────────
     [1] The action proceeds before the undersigned pursuant to Local Rule 302(c)(21).

27
     [2] The motions were submitted for decision without oral argument based upon the record and
28   written briefing.  (ECF No. 37. )

                                              1

1    the reasons discussed below.

2    BACKGROUND[3]

3         On October 13, 2012, at approximately 10:00 a.m., the Vallejo Police Department

4    received a report that a cab driver was being threatened with a knife by his passengers and that

5    they were refusing to pay.  (See Defendants' Separate Statement of Undisputed Material Facts,

6    ECF No. 34-6 ("SSUF") No. 1.)  Defendants and Vallejo Police officers, Joe McCarthy ("Officer

7    McCarthy") and Jerome Bautista ("Officer Bautista"), responded to the cab driver's location.

8    (SSUF No. 2.)  The cab driver pointed out the suspects, who were walking away and were later

9    identified as plaintiffs Marvin Gillam ("Marvin") and Pamala Gillam ("Pamala").  (Id.)  Officer

10   McCarthy called out to Marvin, and Officer Bautista called out to Pamala.  (SSUF No. 3.)  At that

11   point, neither officer knew where the reported knife was or whether it had been concealed on the

12   person of either Marvin or Pamala.  (SSUF Nos. 5, 17.)

13        Upon being contacted by Officer Bautista, Pamala immediately became verbally

14   combative and refused to comply with Officer Bautista's orders to show her hands.  (SSUF No.

15   4.)  However, Officer Bautista ultimately succeeded in handcuffing Pamala.  (SSUF No. 6.)[4]

16   According to Pamala, the handcuffs were too tight, and even though Pamala immediately

17   complained to Officer Bautista, he ignored her and refused to loosen the handcuffs.  (Declaration

18   of Pamala Gillam, ECF No. 38 at 9-11 ["Pamala Decl."] ¶¶ 3-6.)  For his part, Officer Bautista

19

20   [3] Plaintiffs did not respond to defendants' separate statement of undisputed material facts by
     admitting or denying the proposed facts, along with citations to specific evidence to support any
21   denial, as required by Local Rule 260(b).  The mere fact that plaintiffs are proceeding without
     counsel does not exempt them from compliance with the Local Rules.  However, because the
22   declaration and evidence submitted by the *pro se* plaintiffs in this case are brief and make clear
     which proposed facts are ostensibly disputed by plaintiffs, the court exercises its discretion to
23   proceed to the merits of the motions.  Nevertheless, to the extent that the declaration and evidence
     submitted by plaintiffs do not dispute a proposed fact, the court generally deems that proposed
24   fact admitted for purposes of these motions.

25   [4] There is an inconsistency in the record as to how the handcuffing came about.  Officer Bautista
     claims that, while Pamala's attention was diverted, he immediately got behind her, grabbed both
26   her hands, and handcuffed her.  (Declaration of Jerome Bautista, ECF No. 34-4 ["Bautista Decl."]
     ¶ 5.)  By contrast, at her deposition, Pamala testified that Officer Bautista asked for her hand, that
27   she complied, and that Officer Bautista then handcuffed her.  (Declaration of Kelly Trujillo, ECF
     No. 34-2, Ex. A, Deposition of Pamala Gillam ["Pamala Depo"] 16:25-17:17.)

28

                                            2

1    claims that he handcuffed Pamala according to protocol, and that Pamala never complained about

2    her handcuffs being too tight.  (Declaration of Jerome Bautista, ECF No. 34-4 ["Bautista Decl."]

3    ¶ 6.)

4            At around the same time that Officer Bautista initially approached Pamala, Officer

5    McCarthy made contact with Marvin and asked Marvin to sit down on the curb.  (SSUF No. 16;

6    Declaration of Joseph McCarthy, ECF No. 34-3 ["McCarthy Decl."] ¶¶ 4-5; Plaintiffs'

7    Opposition Brief, ECF No. 38 at 4.)  Marvin initially refused and told Officer McCarthy, "Fuck

8    you, I'm 63 yrs old."  (Id.)  From that point on, the parties' accounts of the events concerning

9    Marvin differ.

10           According to plaintiffs,[5] while Marvin was standing still "with his hands and arms down

11   in a prone position," Officer McCarthy grabbed Marvin's hand and pulled Marvin to the ground.

12   (Pamala Decl. ¶ 8.)  After Marvin used "minimal resistance" to stay on his feet, Officer McCarthy

13   struck Marvin in the face with a closed fist.  (Id. ¶¶ 9-10.)  McCarthy subsequently tasered

14   Marvin in the chest several times.  (Id. ¶ 11.)  In deposition testimony cited by defendants,

15   Marvin conceded that he then tried to grab the Taser, but maintained that he was only attempting

16   to "defend away from the pain" and not trying to attack Officer McCarthy.  (SSUF No. 23;

17   Declaration of Kelly Trujillo, ECF No. 34-2, Ex. B ["Marvin Depo."] 25:6-11.)  Thereafter,

18   Officer McCarthy took a flashlight and struck Marvin at least 15-20 times with substantial force

19   all over his body prior to placing Marvin in handcuffs.  (Pamala Decl. ¶ 12.)

20   _____

21   [5] Marvin, upon being questioned at his deposition regarding Officer McCarthy's alleged use of
     excessive force against Marvin, refused to answer virtually all questions on the basis of
22   irrelevance and/or the Fifth Amendment privilege against self-incrimination.  As defendants
     allude to in their briefing, Marvin may well be precluded from testifying at trial as to certain
23   matters in light of the nature of his deposition testimony.  See, e.g., Nationwide Life Ins. Co. v.
     Richards, 541 F.3d 903, 910-11 (9th Cir. 2008).  That is an issue for the trial judge to determine,
24   and the court expresses no opinion regarding the matter here.  For purposes of the pending
     motions, the court need not resolve that issue, because plaintiffs have not offered Marvin's
25   declaration to attempt to demonstrate a genuine dispute of material fact.  Instead, plaintiffs
     offered Pamala's declaration, which does not implicate such concerns.  Although Pamala also
26   invoked the Fifth Amendment privilege as to some deposition questions, she did not refuse to
     answer questions concerning her observations of the interaction between Marvin and Officer
27   McCarthy.

28

1      Officer McCarthy's version of events is quite different.  According to Officer McCarthy,

2   after Marvin refused to sit down and shouted profanities at Officer McCarthy, Marvin:

3           took a step toward Officer Bautista (who at that point was dealing
            with [Pamala] and I prevented him from doing so by holding him
4           and telling him again to take a seat.  At this point, [Pamala] pushed
            my hands off of him.  I pushed him up against a retaining wall to
5           keep him from advancing toward Officer Bautista, as I still did not
            know the location of the knife.  I had yet to pat search [Marvin], he
6           was becoming more aggressive with his behavior, so I decided to
            draw my taser.  [Marvin] grabbed my taser with his left hand so that
7           when I deployed it, the taser darts deployed over [Marvin's]
            shoulder and hit the wall behind him.  At this point, it became a
8           fight for the taser itself.  [Marvin] would not let go.  I was afraid
            that [Marvin] would take the taser or retrieve the knife from
9           somewhere on his person and stab me with it.  I told [Marvin]
            several times to let go of my taser.  I decided to use the taser in stun
10          mode to try to gain compliance.  Instead of pulling the taser away
            from [Marvin], I pushed it toward him in hopes that the stun would
11          cause [Marvin] to release it.  I made contact with [Marvin] two
            times in drive stun mode for a total of 1-2 seconds.  [Marvin ] still
12          refused to let go of the taser and was actively fighting with me.  I
            managed to pull him to the ground.  I then grabbed my flashlight
13          and struck [Marvin] in the arm.  My flashlight fell out of my hand
            so I had to punch [Marvin] in the face.  This caused [Marvin] to
14          finally release the taser and by this time, Officer Bautista had
            handcuffed [Pamala] and was able to assist in handcuffing
15          [Marvin].  The incident lasted less than two minutes from the time
            we arrived on scene to when we had both suspects in custody.
16

17  (McCarthy Decl. ¶¶ 5-10.)

18      A large kitchen knife with an approximately 5-inch blade was ultimately located at the

19  scene.  (SSUF No. 20; Bautista Decl. ¶ 9.)  Marvin was subsequently taken to Sutter Solano

20  Medical Center by ambulance, where he was apparently cleared to go to jail.  (SSUF No. 27.)[6]

21  Pamala was placed in Officer Bautista and Officer McCarthy's patrol car for direct transport to

22  the jail.  (SSUF No. 10.)  Officer Bautista placed his camera on the front passenger visor and

23  turned it on, recording the entire drive to the jail, Pamala's removal from the patrol car, and her

24  placement in a holding cell.  (SSUF Nos. 10, 11; see also video footage lodged with court as

25  Exhibit A to Bautista Decl.)  For the duration of the video footage, Pamala used a significant

26  _____

27  [6] The parties dispute the extent of Marvin's injuries and whether it was appropriate for Sutter
    Solano Medical Center to have cleared Marvin for jail.  However, Sutter Solano Medical Center
    is not a party to this action, and those factual disputes are not pertinent to the court's resolution of
28  the instant motions.

4

1   amount of profanity and made several offensive statements about the officers, but never

2   mentioned that her handcuffs were too tight or that she was experiencing any pain.  (Id.)

3         On September 24, 2014, plaintiffs commenced this action, alleging the following claims:

4   (1) a claim by Marvin against Officer McCarthy for excessive force in violation of the Fourth

5   Amendment pursuant to 42 U.S.C. § 1983; (2) a claim by Pamala against Officer Bautista for

6   excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983; and (3) a

7   claim by both plaintiffs against the City of Vallejo pursuant to Monell v. New York City Dep't of

8   Social Services, 436 U.S. 658 (1978).  (ECF No. 1.)  On December 23, 2014, defendants

9   answered the complaint, and on June 15, 2015, the court entered a pretrial scheduling order

10  requiring all law and motion matters, including dispositive motions, to be heard no later than

11  April 28, 2016.  (ECF Nos. 9, 23.)

12        On March 22, 2016, defendants timely filed a motion for summary judgment, which was

13  noticed for hearing on April 28, 2016.  (ECF No. 34.)  Thereafter, on April 15, 2016, one day

14  after plaintiffs' opposition was due, plaintiffs filed a motion for an extension of time to oppose

15  defendants' motion.  (ECF No. 36.)  Despite the tardy request, the court, in light of plaintiffs' *pro*

16  *se* status, granted the request.  (ECF No. 37.)  Plaintiffs were granted an extension until May 4,

17  2016, to file their opposition to defendants' motion for summary judgment, and defendants were

18  permitted to file a reply brief no later than May 13, 2016.  (Id.)  The court advised that, in light of

19  the rapidly approaching final pretrial conference, the court was strongly disinclined to grant any

20  further extensions of time absent extraordinary circumstances.  (Id.)  Subsequently, on May 3,

21  2016, plaintiffs filed their opposition to defendants' motion for summary judgment, as well as a

22  cross-motion for summary judgment.  (ECF No. 38.)  Defendants filed their reply brief on May

23  13, 2016.  (ECF No. 39.)

24        Pursuant to the court's prior order, the motions were submitted for decision on the record

25  and written briefing, and are now ripe for resolution.  (ECF No. 37.)

26  LEGAL STANDARD

27        Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary

28  judgment, identifying each claim or defense--or the part of each claim or defense--on which

1   summary judgment is sought."  It further provides that "[t]he court shall grant summary judgment

2   if the movant shows that there is no genuine dispute as to any material fact and the movant is

3   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7]  A shifting burden of proof

4   governs motions for summary judgment under Rule 56.  <u>Nursing Home Pension Fund, Local 144</u>

5   <u>v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010).  Under

6   summary judgment practice, the moving party:

7
           always bears the initial responsibility of informing the district court
8          of the basis for its motion, and identifying those portions of "the
           pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
9          demonstrate the absence of a genuine issue of material fact.

10  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

11  56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

12  only prove that there is an absence of evidence to support the non-moving party's case."  <u>In re</u>

13  <u>Oracle Corp. Sec. Litig.</u>, 627 F.3d at 387 (<u>citing</u> <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R.

14  Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

15  not have the trial burden of production may rely on a showing that a party who does have the trial

16  burden cannot produce admissible evidence to carry its burden as to the fact").

17          If the moving party meets its initial responsibility, the opposing party must establish that a

18  genuine dispute as to any material fact actually exists.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith</u>

19  <u>Radio Corp.</u>, 475 U.S. 574, 585-86 (1986).  To overcome summary judgment, the opposing party

20  must demonstrate the existence of a factual dispute that is both material, i.e., it affects the

21  outcome of the claim under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

22  242, 248 (1986); <u>Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.</u>, 618 F.3d

23  1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could

24  return a verdict for the nonmoving party,'"  <u>FreecycleSunnyvale v. Freecycle Network</u>, 626 F.3d

25  509, 514 (9th Cir. 2010) (<u>quoting</u> <u>Anderson</u>, 477 U.S. at 248).  A party opposing summary

26

27  [7] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
    However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28  standard for granting summary judgment remains unchanged."

1  judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing

2  to particular parts of materials in the record, including depositions, documents, electronically

3  stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers,

4  or other materials; or (B) showing that the materials cited do not establish the absence or presence

5  of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

6  fact."[8]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However, the opposing party "must show more than the

7  mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing

8  Anderson, 477 U.S. at 252).

9          In resolving a motion for summary judgment, the evidence of the opposing party is to be

10  believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may be drawn

11  from the facts placed before the court must be viewed in a light most favorable to the opposing

12  party.  See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963,

13  966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the opposing party

14  "must do more than simply show that there is some metaphysical doubt as to the material

15  facts...Where the record taken as a whole could not lead a rational trier of fact to find for the non-

16  moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citation

17  omitted).

18  DISCUSSION

19          Defendants' Motion for Summary Judgment

20          Defendants move for summary judgment as to all of plaintiffs' claims.  The court first

21  addresses plaintiffs' individual claims under 42 U.S.C. § 1983, and then turns to the Monell claim

22  against the City of Vallejo.

23          *Marvin's 42 U.S.C. § 1983 claim against Officer McCarthy*

24          As noted above, Marvin asserts an individual claim against Officer McCarthy for

25  excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983.

26  _____

27  [8] "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

28  Fed. R. Civ. P. 56(c)(2).

1        As the United States Supreme Court has explained:

2                 Determining whether the force used to effect a particular seizure is
                  reasonable under the Fourth Amendment requires a careful
3                 balancing of the nature and quality of the intrusion on the
                  individual's Fourth Amendment interests against the countervailing
4                 governmental interests at stake.  Our Fourth Amendment
                  jurisprudence has long recognized that the right to make an arrest or
5                 investigatory stop necessarily carries with it the right to use some
                  degree of physical coercion or threat thereof to effect it.  Because
6                 the test of reasonableness under the Fourth Amendment is not
                  capable of precise definition or mechanical application, however,
7                 its proper application requires careful attention to the facts and
                  circumstances of each particular case, including the severity of the
8                 crime at issue, whether the suspect poses an immediate threat to the
                  safety of the officers or others, and whether he is actively resisting
9                 arrest or attempting to evade arrest by flight.  The reasonableness of
                  a particular use of force must be judged from the perspective of a
10                reasonable officer on the scene, rather than with the 20/20 vision of
                  hindsight…As in other Fourth Amendment contexts, however, the
11                reasonableness inquiry in an excessive force case is an objective
                  one: the question is whether the officers' actions are objectively
12                reasonable in light of the facts and circumstances confronting them,
                  without regard to their underlying intent or motivation.  An
13                officer's evil intentions will not make a Fourth Amendment
                  violation out of an objectively reasonable use of force; nor will an
14                officer's good intentions make an objectively unreasonable use of
                  force constitutional.

15

16   Graham v. Connor, 490 U.S. 386, 396-97 (1989) (internal citations and punctuation marks

17   omitted).

18        Here, Officer McCarthy essentially contends that, after Marvin's refusal to sit down and

19   use of profanity, it was reasonably necessary to escalate the level of force used to deploying a

20   taser, striking with a flashlight, and eventually punching Marvin in the face, because Marvin was

21   advancing towards Officer Bautista and getting more and more aggressive.  If persuaded by

22   Officer McCarthy's account, a trier of fact may well find that Officer McCarthy's use of force

23   was objectively reasonable, particularly given the cab driver's report of a knife (which at the time

24   had not yet been located), the potential immediate threat to both officers, and Marvin's increasing

25   active resistance.

26        However, plaintiffs strongly dispute that Marvin was advancing towards Officer Bautista

27   and becoming increasingly aggressive.  They apparently concede that Marvin initially refused to

28   sit down and used profanity, but claim that Marvin was standing still with his hands and arms

8

1   down when Officer McCarthy grabbed and pulled Marvin, a 63-year old, to the ground.  When

2   Marvin then minimally resisted by attempting to stay on his feet, Officer McCarthy allegedly

3   resorted to punching, tasering, and striking Marvin with a flashlight.  Although Marvin

4   admittedly at some point tried to grab the taser, he claims that it was only to defend against the

5   pain.  As such, plaintiffs contend that it was Officer McCarthy who from the outset unnecessarily

6   and unreasonably escalated the level of force used.  If plaintiffs' version is found credible, Marvin

7   arguably did not pose an immediate threat to the safety of the officers, because he had made no

8   overt movements towards the officers, nor did he otherwise physically threaten the officers.

9   Therefore, a rational trier of fact may find that Officer McCarthy's level of force used was

10   objectively unreasonable.

11        Consequently, a genuine dispute of material fact here precludes a grant of summary

12   judgment in Officer McCarthy's favor.

13        Defendants also argue that, even if a constitutional violation occurred, Officer McCarthy

14   is entitled to qualified immunity.  "Qualified immunity is an entitlement not to stand trial or face

15   the other burdens of litigation."  Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011).

16   "An officer will be denied qualified immunity in a § 1983 action only if (1) the facts alleged,

17   taken in the light most favorable to the party asserting injury, show that the officer's conduct

18   violated a constitutional right, and (2) the right at issue was clearly established at the time of the

19   incident such that a reasonable officer would have understood her conduct to be unlawful in that

20   situation."  Id.  In this case, if plaintiffs' evidence is believed, a reasonable officer would plainly

21   have understood that it was unlawful to resort to punching, tasering, and striking Marvin with a

22   flashlight merely because Marvin initially refused to sit down and used some profanity, and

23   without posing an immediate threat to the officer's safety or the safety of others.  Therefore, the

24   court cannot find that Officer McCarthy is entitled to qualified immunity at the summary

25   judgment stage.

26        *Pamala's 42 U.S.C. § 1983 claim against Officer Bautista*

27        Pamala also asserts an individual claim against Officer Bautista for excessive force in

28   violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983.  Pamala's claim is based

9

1    exclusively on the fact that Officer Bautista allegedly placed her in too tight handcuffs and

2    refused to loosen the handcuffs despite Pamala's complaints.  See LaLonde v. County of

3    Riverside, 204 F.3d 947, 960 (9th Cir. 2000) (recognizing that tight handcuffing can constitute

4    excessive force).

5         Defendants point out that Pamala testified at her deposition that she told Officer Bautista

6    that her handcuffs were too tight on numerous occasions, including repeatedly during the ride in

7    the patrol car to the jail.   (SSUF No. 9; Pamala Depo 22:14-24:16.)  By contrast, the video

8    footage from the patrol car shows that Pamala used a significant amount of profanity and made

9    several offensive statements about the officers, but never mentioned that her handcuffs were too

10   tight or that she was experiencing any pain.  (See video footage lodged with court as Exhibit A to

11   Bautista Decl.)  Defendants also note that Pamala, at her deposition, could not even remember if

12   she asked for medical treatment for her wrists at the jail or at any time thereafter.  (SSUF No. 12;

13   Pamala Depo 26:21-27:6.)

14        Plaintiffs counter that Pamala did in fact complain about the handcuffs, but that she may

15   have forgotten exactly when she had complained.  In her declaration submitted in opposition to

16   defendants' motion, Pamala asserts that, upon being handcuffed, she immediately complained to

17   Officer Bautista that the handcuffs were too tight, but that he ignored her and refused to loosen

18   the handcuffs.  (Pamala Decl. ¶¶ 3-6.)  Plaintiffs posit that Pamala's complaints were likely made

19   before the camera was turned on.

20        After reviewing the video footage, the court is troubled by the glaring inconsistency

21   between Pamala's deposition testimony and the video footage, particularly given her testimony

22   that she *repeatedly* complained during the car ride.  That said, because the video camera only

23   started recording when Pamala was placed in the patrol vehicle, the video footage does not

24   definitively show that Pamala entirely failed to complain about the tightness of her handcuffs.  To

25   be sure, in light of the above, defendants will have significant fodder for cross-examination at

26   trial.  However, if the evidence is viewed in the light most favorable to Pamala, a genuine dispute

27   of material fact nonetheless precludes a grant of summary judgment in Officer Bautista's favor.

28   Furthermore, because a reasonable officer would plainly have understood that it is unlawful to put

1    a person in excessively tight handcuffs and to ignore such a person's complaints, the court also

2    cannot find that Officer Bautista is entitled to qualified immunity at the summary judgment

3    stage.[9]

4                    *Plaintiffs' Monell claim against the City of Vallejo*

5            Plaintiffs further assert a <u>Monell</u> claim against the City of Vallejo, alleging that the City of

6    Vallejo has a longstanding practice, policy, or custom of allowing police officers to use excessive

7    force.  (ECF No. 1.)  <u>See</u> <u>Monell v. New York City Dep't of Social Services</u>, 436 U.S. 658 (1978)

8    (holding that, since there is no *respondeat superior* liability under section 1983, municipal entities

9    may be sued under section 1983 only upon a showing that an official policy, custom, or practice

10   of the municipal entity caused the constitutional tort).

11           The City of Vallejo argues that it is entitled to summary judgment on plaintiffs' <u>Monell</u>

12   claim, because plaintiffs have produced no admissible evidence of a policy, custom, or practice of

13   allowing police officers to use excessive force by the City of Vallejo.  That argument has merit.

14   In their complaint, plaintiffs allege the existence of various lawsuits against the City of Vallejo

15   involving claims of excessive force and other Fourth Amendment violations.  (ECF No. 1.)

16   However, the mere fact that such lawsuits were filed does not support the existence of a policy,

17   custom, or practice of allowing excessive force by police officers.  <u>See</u> <u>Hocking v. City of</u>

18   <u>Roseville</u>, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008) ("Statistics of unsustained

19   complaints of excessive force and other police misconduct, without any evidence that those

20   complaints had merit, does not suffice to establish municipal liability under § 1983."); <u>Strauss v.</u>

21   <u>City of Chicago</u>, 760 F.2d 765, 768-69 (7th Cir. 1985) (noting that "the number of complaints

22   filed, without more, indicates nothing.  People may file a complaint for many reasons, or for no

23   reason at all.  That they filed complaints does not indicate that the policies that Strauss alleges

24   exist do in fact exist and did contribute to his injury.").  Most of the lawsuits listed in plaintiffs'

25   _____

26   [9] Defendants also move for summary judgment with respect to a purported state law tort claim by
     Pamala for infliction of emotional distress related to Pamala witnessing Officer McCarthy's

27   interaction with Marvin.  Pamala testified at her deposition to suffering such emotional distress.
     However, defendants' request is moot, because plaintiffs' complaint does not allege any state law

28   claims, nor does plaintiffs' opposition brief contend that such a state law claim is asserted.

complaint remain pending and have not, at least as of yet, resulted in a finding of a constitutional violation. Even if a few of the lawsuits against individual officers were ultimately successful on the merits or settled, see, e.g., Deocampo, et al. v. Potts, et al., 2:06-cv-1283-WBS-CMK; Cooley v. City of Vallejo, et al., 2:12-cv-591-LKK-AC, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Here, plaintiffs have produced no admissible evidence of the City of Vallejo's purported policy, custom, or practice. Tellingly, plaintiffs' opposition brief does not even attempt to address plaintiffs' Monell claim, and effectively concedes its inadequacy.

Therefore, the City of Vallejo is entitled to summary judgment on plaintiffs' Monell claim.

Plaintiffs' Cross-Motion for Summary Judgment

Along with their opposition to defendants' motion for summary judgment, plaintiffs also filed a cross-motion for summary judgment with respect to their individual claims against Officer McCarthy and Officer Bautista.

As an initial matter, plaintiffs' cross-motion should be denied as untimely. The pretrial scheduling order required dispositive motions to be filed so that they may be heard no later than April 28, 2016. (ECF No. 23.) After defendants filed a timely motion for summary judgment, plaintiffs sought, and were granted, an extension to oppose defendants' motion until May 4, 2016. (ECF No. 37.) No extension to file their own dispositive motion was granted.

Moreover, even if the motion were not untimely, it should be denied on the merits. For the reasons discussed above, genuine disputes of material fact remain concerning both Marvin's and Pamala's excessive force claims, and summary judgment is inappropriate under the applicable legal standards.

CONCLUSION

In sum, the court concludes that summary judgment should be granted as to plaintiffs' Monell claim against the City of Vallejo. However, Marvin's 42 U.S.C. § 1983 claim against

Officer McCarthy and Pamala's 42 U.S.C. § 1983 claim against Officer Bautista should proceed to trial.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 34) be GRANTED IN PART and DENIED IN PART.

2.  Plaintiffs' cross-motion for summary judgment (ECF No. 38) be DENIED.

3.  Summary judgment be granted in favor of the City of Vallejo as to plaintiffs' Monell claim.

4.  Summary judgment be denied as to Marvin's 42 U.S.C. § 1983 claim against Officer McCarthy and Pamala's 42 U.S.C. § 1983 claim against Officer Bautista.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated:  May 26, 2016

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE